The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Martha W. Lowrance and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the holding of the prior Opinion and Award. The Full Commission, however, pursuant to G.S. § 97-85, has modified the Opinion and Award with regards to plaintiff's average weekly wage and compensation rate.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing on 15 November 1996 as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between the deceased employee and defendant-employer.
3. Defendant-employer is self-insured with Key Risk Management Services as the servicing agent.
4. On 23 April 1994, the deceased employee sustained an injury by accident arising out of and in the course of her employment with the defendant-employer which resulted in her death on 23 April 1994.
5. Notwithstanding the dispute between the parties over the correct average weekly wage, defendant has been paying death benefits to plaintiffs at the rate of $255.89 per week based on defendant's contended average weekly wage of $383.81. Defendant has made such payments from 24 April 1994.
6. The sole issue which was before the Deputy Commissioner and which is now before the Full Commission on appeal is the proper method of calculating the deceased employee's average weekly wage.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. The deceased employee, Mary Hendricks, began working for defendant-employer in April of 1992. When she began working for defendant-employer, she was a novice with no experience and no training in real estate. Her prior business experience had been as a sitter for elderly individuals in need of care and attention.
2. Decedent was hired as a full-time worker to sell real estate.
3. Modest production goals were set for decedent by defendant-employer in 1992. These goals called for her to earn $9,000.00 in the months remaining in 1992 following her hire.
4. Decedent actually earned $3,603.00 in 1992. This substantial shortfall was not unusual for someone just starting out in the real estate business, as it takes a substantial amount of time for an individual to begin generating a regular stream of business in the real estate industry.
5. Production goals for 1993 called for $16,000.00 in earnings. Decedent again fell short of this goal as her actual earnings for 1993 were $13,007.50.
6. In late 1993 and in the months of 1994 before her death, the deceased employee began taking steps to increase her productivity and earnings.
7. In December of 1993 decedent purchased a home computer to use in her work as a real estate sales person. Prior to this time, decedent did not have access to a personal computer at home for use in her work.
8. Decedent's use of the telephone as a business tool increased in 1994 prior to her death. During this period she would typically make telephone calls regarding her work whenever she was home between the hours of 7:00 a.m. and 11:00 p.m.
9. Decedent's business activity increased greatly in 1994 over what it had been in 1993. At the time of her death, decedent was working eight to ten hours a day, six to seven days a week. This was a substantial increase over her level of work activity in 1992 and 1993.
10. The above-mentioned activities had a direct impact on decedent's productivity and earnings in 1994. Decedent's earning goal for 1994 was $17,748.00. From 1 January 1994 through the date of her death on 23 April 1994, decedent earned income totaling $9,849.22.
11. Decedent also earned an award as a top sales producer just before her death. She had never received such an award from the defendant-employer previously.
12. Decedent was able to increase her productivity and earnings despite the fact that she was out of the state with her mother in Kentucky for ten days in early 1994, and the fact that the period from the previous Thanksgiving to mid-January is historically a very slow time in the real estate industry.
13. Decedent's increased earnings in 1994 reflected the naturally extended process of slowly building a successful real estate practice. At the time of her death, decedent's hard work and professionalism were beginning to pay off as she had established a good reputation in the community and was becoming more confident in her duties and how she was performing them.
14. Although during the months of 1994 leading up to her death decedent's income had greatly increased due to the natural process of building a real estate practice, defendant has based its calculation of her average weekly wage on her earnings over the 52 week period prior to her death. This method of calculating decedent's average weekly wage is unfair and does not most nearly approximate the amount of wages decedent would be earning were it not for her injury and resulting death.
15. The Full Commission finds that the record in this matter presents exceptional circumstances regarding the calculation of decedent's average weekly wage. The calculation of decedent's average weekly wage should properly reflect the process involved in building her real estate practice and more nearly approximate the amount she would be earning were it not for her injury and resulting death.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Defendant based its calculation of decedent's average weekly wage on her earnings over the 52 week period prior to her death. G.S. § 97-2(5). This method of calculating decedent's average weekly wage is unfair and is not the method which most nearly approximates the amount of wages decedent would be earning were it not for her injury and resulting death. Id. Further, none of the other first four methods outlined in the Act will result in a fair calculation of decedent's average weekly wage.Id.
2. Based on the exceptional circumstances of this case, the Full Commission concludes that the fifth method outlined in G.S. § 97-2(5) is the only method which is fair and which would result in a calculation of decedent's average weekly wage which most nearly approximates the amount of wages she would be earning were it not for her injury and resulting death. The Full Commission concludes that the calculation of decedent's average weekly wage should properly reflect the process involved in building her real estate practice and that this will more nearly approximate the amount she would be earning were it not for her injury and resulting death. Id.
3. Considering all the factors at issue in this case, the Full Commission concludes that an appropriate basis for determining a fair and just average weekly wage is to first determine the total amount earned by the deceased employee in 1994, which was $9,849.22. The Full Commission next considers the number of weeks worked by the deceased employee in 1994 which was fifteen. The Full Commission next divides the total earnings received in 1994 by fifteen which yields the sum of $656.61, a fair and proper average weekly wage in this case. G.S. § 97-2(5).
4. The aforementioned average weekly wage yields a compensation rate of $437.70. Death benefits paid by the defendant from 23 April 1994 should have been at the rate of $437.70 rather than $255.89. G.S. § 97-2(5).
5. Plaintiffs have been paid 158 weeks of benefits at the rate of $255.89 rather than $437.70, and are therefore entitled to have defendant pay the difference for these weeks, which is a total of $28,725.98. Having accrued, this compensation shall be paid to plaintiffs in a lump sum and is subject to the attorney's fee approved herein.
G.S. § 97-38.
6. Plaintiffs are entitled to have defendant make the remaining payments of compensation benefits at the rate of $437.70 per week. This compensation is subject to the attorney's fee approved herein. G.S. § 97-38.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to a reasonable attorney's fee approved herein, defendant shall pay to plaintiffs the difference between the weekly payments of $255.89, which have been paid for a period of 158 weeks, and $437.70, the amount to which plaintiffs were entitled. This difference in compensation amounts to $28,725.98, and having accrued, shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee approved herein, defendant shall pay the remaining 242 weeks of compensation benefits to plaintiff's at a rate $437.70 per week.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded above is hereby approved for counsel for plaintiffs. From the amounts having accrued, this fee shall be deducted from amounts owed to plaintiffs and paid directly to counsel for plaintiffs, with counsel for plaintiffs receiving every fourth check of compensation thereafter.
4. Defendant shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER